# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50530
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOE ALEX ANTU,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
U.S.D.C. No. 2:11-CR-1936

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

The defendant, Joe Alex Antu, was convicted of possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841, after entering a conditional plea of guilty, preserving his right to appeal the district court's denial of his motion to suppress the evidence. Specifically, Antu claims that United States Border Patrol (USBP) agents lacked

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

reasonable suspicion to conduct the warrantless stop and arrest which led to the discovery of the marijuana.   We AFFIRM.

As the district court found, two USBP agents, including Agent Octavia Salazar, Jr., observed Antu driving a truck towing a horse trailer in a direction away from the border on FM 2644, a two-lane road, at approximately 6:30 a.m. The road offers an indirect 97.5-mile route between Eagle Pass, Texas, and Uvalde, Texas, which is 40 miles longer than the more direct route between those towns but bypasses two immigration checkpoints.   Agent Salazar testified that both agents were aware that FM 2644 was often used to transport drugs and illegal aliens, and both agents had previously arrested drivers in the area who used trailers for those illicit purposes.

Agent Salazar testified that most vehicles towing truck trailers on FM 2644 were government "tick riders" rather than private vehicles because the area contains large ranches which rarely transport horses.   Furthermore, it is very uncommon for the "tick riders" to drive away from the border, and Antu's truck and trailer lacked conspicuous government plates.   Based on these observations, the agents began to follow Antu in their marked car.

The agents were unable to perform a registration check because the license plates were obscured.   The truck plate was obscured by the trailer, and the trailer plate was located near a back wheel, which was an uncommon location and hard to see.   The agents ruled out several possible legitimate reasons for Antu traveling away from the border with a horse trailer at that early hour, including a rodeo or other event.   After the agents followed Antu for approximately five minutes, he began to slow down and swerve between lanes, crossing the center line multiple times.   At that point the agents stopped him and questioned him.   In the course of the interview, he consented to a search of his truck and trailer, and USBP agents located the marijuana.

No. 13-50530

Because Antu consented to the search of the truck and trailer in the course of the warrantless stop, the only issue on appeal is whether the stop itself was constitutional, and the government bears the burden of proof. *See United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). The question is whether the USBP agents "reasonably suspect[ed] that an occupant of the vehicle [was] involved in illegal activity." *Id.* As the Supreme Court explained in *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975):

> Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area. Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic are all relevant. They also may consider information about recent illegal border crossings in the area. The driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion. Aspects of the vehicle itself may justify suspicion. For instance, officers say that certain station wagons, with large compartments for fold-down seats or spare tires, are frequently used for transporting concealed aliens. . . .[1]

Citing *Brignoni-Ponce* and the facts set out above, the district court concluded that the USBP agents possessed reasonable suspicion to stop Antu and that, as a result, the warrantless stop was constitutional. We agree and therefore AFFIRM.

---

[1] *Id.* 884-85 (citations and footnote omitted).